UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

EFUA EHI OKOH,

                 **Plaintiff,**

   - against -

DENNIS SULLIVAN, JOZEF
DODZIUK, PH.D. PROGRAM IN
MATHEMATICS OF CUNY
GRADUATE SCHOOL AND
UNIVERSITY CENTER, and THE
GRADUATE SCHOOL AND
UNIVERSITY CENTER OF THE CITY
UNIVERSITY OF NEW YORK,

              **Defendants.**

------------------------------------------------- X

**OPINION AND ORDER**

**10 Civ. 2547 (SAS)**



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Proceeding pro se, Efua Ehi Okoh brings this suit against Professors

Dennis Sullivan and Jozef Dodziuk ("Individual Defendants"), the Ph.D. Program

in Mathematics of CUNY Graduate School and University Center, and The

Graduate School and University Center of the City University of New York

(collectively "CUNY").  Invoking federal question and diversity jurisdiction, Okoh

asserts nine claims.[1]  Construing Okoh's complaint liberally given his pro se status,

his claims are understood as: 1) race and national origin discrimination pursuant to

section 1983 of Title 42 of the United States Code, Title VI ("Title VI"),[2] and Title

VII ("Title VII")[3] of the Civil Rights Act of 1964; 2) conspiracy pursuant to

section 1985 of Title 42 of the United States Code; and 3) retaliation pursuant to

Title VII.  Okoh also appears to assert New York state claims of:  1) breach of

implied contract; 2) intentional infliction of emotional distress ("IIED"); and 3)

negligent infliction of emotional distress ("NIED").  Defendants move to dismiss

Okoh's Second Amended Complaint for lack of subject matter jurisdiction and for

failure to state a claim upon which relief can be granted pursuant to Federal Rules

of Civil Procedure 12(b)(1) and 12(b)(6), respectively.  For the reasons set forth

below, Defendants' motion is granted.

## II.    BACKGROUND

---

[1]        Okoh brings the following nine claims:  [1] Violation of the Ph.D.
Program in Mathematics' published general policy regarding the advancement of
students to various levels; [2] Discrimination on the basis of race/color; [3]
Discrimination on the basis of national origin/ethnicity; [4] Conspiracy; [5] Failure
to consistently apply the laws declared in the student handbook; [6] Acting out of
good faith; [7] Failure to disclose The Graduate School and University Center's
bylaws; [8] Intellectual Property Theft; [9] Retaliation for complaint of
discrimination. *See* Complaint ("Compl.") at 5.

[2]        *See* 42 U.S.C. § 2000d.

[3]        *See id.* § 2000e *et seq.*

Okoh is an African-American man of Nigerian descent who was a mathematics Ph.D. candidate at CUNY from May 1999 until the Summer of 2008.[4] In the Spring 2003 semester, Okoh began working on "a project [ ] under the joint consultation of Dennis Sullivan and Jozef Dodziuk, but primarily Jozef Dodziuk."[5] By this time, Okoh had passed his "First Examination" and was working toward his "Second Examination" in the Ph.D. program.[6]

Okoh continued to work toward his Second Examination and attend Sullivan's classes when, beginning in the Fall 2004 semester, Okoh observed that Sullivan rarely interacted with him despite his efforts to engage Sullivan in conversation before and after class.[7] Okoh also alleges that Sullivan made "antagonistic" facial expressions toward him during class.[8] Likewise, when Okoh approached Dodziuk with his research, Dodziuk recommended that Okoh find another advisor, despite Dodziuk's promise to "make time" to advise Okoh.[9] Okoh

---

[4]     *See* Compl. at 5, 13.

[5]     *Id.* at 6.

[6]     *Id.* at 5-6.

[7]     *See id.* at 7-9.

[8]     *Id.* at 9.

[9]     *Id.* at 7-8.

3

claims that Sullivan and Dodziuk continued to "shun" him[10] and that Okoh met

with Sullivan only "three times in a three year span."[11]  Okoh also claims that

during this time, Sullivan made "racially insensitive remarks," such as "[t]he only

thing harder is picking cotton."[12]

On May 17, 2006, in a meeting arranged by the Ombudsman, Okoh

met with Sullivan to discuss Okoh's progress toward the Ph.D. degree.[13]  Okoh

"saw that [Sullivan] was not looking to move forward" and left the meeting

distraught.[14]  As Okoh left the meeting, he saw Dodziuk outside of Sullivan's

office, appearing as though he knew what was happening in the meeting in

Sullivan's office.[15]  Subsequently, Okoh was hospitalized for a nervous breakdown

and emotional trauma.[16]

In October 2006, Okoh filed a grievance letter with the Office of the

---

[10]    *Id.* at 8.

[11]    Efua Ehi Okoh's Memorandum of Law in Opposition to Defendants'
Motion to Dismiss the Complaint ("Pl. Mem.") at 4-5.

[12]    Compl. at 8.

[13]    *See id.* at 9.

[14]    *Id.* at 10.

[15]    *See id.*

[16]    *See id.*

President, complaining about the lack of support from Sullivan and the

Mathematics Program.[17]  Okoh claims that this letter prompted retaliation by

Defendants.[18]  After Okoh filed his complaint, the Acting Associate Provost called

a meeting to arrange for Okoh's Second Examination and devise a plan toward an

"en-route Master's degree."[19]  Okoh's Second Examination was scheduled for May

15, 2007.[20]  The evening before the Second Examination, Okoh received an email

from Dodziuk that changed the topic of the Second Examination to one with which

Okoh was not sufficiently familiar.[21]  Okoh replied to the email that "[he was]

aware that [he had] many enemies at the Graduate Center and that a higher power

would remedy the situation."[22]  Okoh was determined to "have that exam as

scheduled."[23]

When Okoh showed up at the school on May 15, 2007, he was

escorted by security on account of his email from the prior evening, which

---

[17]     *See id.*

[18]     *See id.*

[19]     *Id.* at 10-11.

[20]     *See id.* at 11.

[21]     *See id.*

[22]     *Id.*

[23]     *Id.*

5

Dodziuk had interpreted as threatening.[24]  Okoh was "forced to attend a meeting"

with Dodziuk and others, where his examination was rescheduled for October

2007.[25]

Okoh took his Second Examination in October 2007 and failed.[26]

Okoh claims that he was not informed of the examination format and did not

expect to be "barrage[d]" with questions.[27]  Okoh complained to the school

administration, and was given a third opportunity to take the examination in March

2008 but failed again.[28]  Okoh was terminated from the Ph.D. program in the

Summer of 2008.[29]

Okoh unsuccessfully appealed his termination with the Mathematics

Program, and then again with the Graduate School and University Center.[30]  Okoh

alleges that due to his untimely termination from the program, he was unable to

recover the research he had shared with the Mathematics Program, which he later

---

[24]     *See id.* at 11-12.

[25]     *Id.* at 12.

[26]     *See id.* at 13.

[27]     *Id.*

[28]     *See id.*

[29]     *See id.*

[30]     *See id.* at 13-14.

discovered on the Internet.[31]

Okoh alleges that all of these acts were based on discrimination, noting that Sullivan's non-African-American students eventually graduated, that Sullivan knew of Okoh's Nigerian descent, and that other African-American students had experienced similar difficulties with their Second Examinations.[32] Okoh claims that Sullivan and other faculty members did not support Okoh's application for funds and fellowships, forcing Okoh to take on student loans and credit card debt to support himself.[33] Okoh seeks ninety-eight million dollars in compensatory and punitive damages, as well as injunctive relief against CUNY so that he is "not retaliated against in response to filing this suit."[34]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

#### 1.   Lack of Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure Rule 12(b)(1), a party may assert by motion the defense that the court lacks subject matter jurisdiction to hear

---

[31]     *See id.* at 14.

[32]     *See id.* at 6, 10, 14.

[33]     *See id.* at 14.

[34]     *Id.* at 4.

a claim.  Federal courts are courts of limited jurisdiction and may not entertain matters over which they do not have subject matter jurisdiction.[35]  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court [ ] may refer to evidence outside the pleadings."[36]  Thus, a district court may refer to evidence such as sworn affidavits, correspondence between the parties, contracts, or other relevant documents.[37]

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."[38]  Where the plaintiff is proceeding pro se, his or her pleadings must be considered under a more lenient standard than that accorded to "formal pleadings drafted by lawyers,"[39] and his or her pleadings must be "interpret[ed] . . . to raise the strongest arguments they suggest."[40]

---

[35]  *See Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001).

[36]  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

[37]  *See id.*

[38]  *Id.* (citation omitted).

[39]  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). *Accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("Because [plaintiff] is a pro se litigant, we read his supporting papers liberally.").

[40]  *Burgos*, 14 F.3d at 790.

## 2.   Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a claim for "failure to state a claim upon which relief can be granted[.]"  The Supreme Court's landmark decisions in *Bell Atlantic Corp. v. Twombly*[41] and *Ashcroft v. Iqbal*[42] arguably shifted pleading standards from "simple notice pleading" to a "more heightened form of pleading,"[43] requiring that allegations in a complaint meet a standard of "plausibility" to survive a motion to dismiss.[44]  A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]  While plausibility "is not akin to a probability requirement," plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[46]  Pleading facts that are "merely consistent with a defendant's liability"[47] fails to "nudge[ ] [the plaintiff's] claims across the line

---

[41]   550 U.S. 544 (2007).

[42]   — U.S. —, 129 S. Ct. 1937, 1955 (2009).

[43]   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[44]   *Twombly*, 550 U.S. at 564.

[45]   *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

[46]   *Id.* (quotation marks omitted).

[47]   *Id.* (quotation marks omitted).

from the conceivable to plausible."[48]  In reviewing a motion to dismiss, the court

must "accept as true all of the factual allegations contained in the complaint"[49] and

"draw all reasonable inferences in the plaintiff's favor."[50]  However, the court need

not accord "[l]egal conclusions, deductions or opinions couched as factual

allegations . . . a presumption of truthfulness."[51]

## IV.   APPLICABLE LAW

### A.   Sovereign Immunity

#### 1.   For Arms of a State

While the Supreme Court often refers to Eleventh Amendment

sovereign immunity as a jurisdictional bar, it has expressly reserved the question of

whether sovereign immunity is an issue of subject matter jurisdiction.[52]

Nevertheless, the Second Circuit has permitted motions to dismiss on sovereign

immunity grounds pursuant to Rule 12(b)(1) prior to the filing of the answer to the

---

[48]     *Twombly*, 550 U.S. at 570.

[49]     *Id.* at 572.  *Accord Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[50]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[51]     *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation and quotation marks omitted).

[52]     *See Woods v. Rondout Valley Central Dist. Bd. of Educ.*, 466 F.3d 232, 237-38 (2d Cir. 2005) (citations omitted).

complaint.[53]

The Eleventh Amendment of the United States Constitution provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign state." In other words, "state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment."[54] While the Eleventh Amendment does not apply to municipal corporations, it does extend "to 'state agents and state instrumentalities' that are, effectively, arms of a state."[55]

### 2.   For Individual Defendants

The Eleventh Amendment bars claims against State officials acting in

---

[53]   *See, e.g.*, *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71 (2d Cir. 2007).

[54]   *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quotation marks and citations omitted).

[55]   *Woods*, 466 F.3d at 237 (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)) (citation omitted).

their official capacity.[56]  In such actions, the real party in interest is the State, and therefore, claims are barred regardless of whether the remedy sought is damages or injunctive relief.[57]  *Ex parte Young*[58] has created an exception to immunity for State employees sued in their official capacity, but is limited to claims for prospective injunctive relief for ongoing violations of federal law.[59]  Sovereign immunity does not protect state employees from being sued in their personal capacity.[60]

### B.      Federal Claims Against Individual Defendants in Their Personal Capacity

#### 1.      Section 1983 Claim

Section 1983 establishes liability for the deprivation of constitutional rights by anyone acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."[61]  Personal

---

[56]      *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165-69 (1985).

[57]      *See Federal Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 766 (2002); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) (citing *Cory v. White*, 457 U.S. 85, 91 (1982)).

[58]      209 U.S. 123 (1908).

[59]      *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citing *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)).

[60]      *See Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) (citing *Kentucky*, 473 U.S. at 166-67).

[61]      42 U.S.C. § 1983.

12

liability can be found against state officials acting under color of law to deprive another of a federal right,[62] provided that the official violated the right through his own conduct.[63]

A plaintiff may show deprivation of his Fourteenth Amendment right to equal protection by demonstrating that he was adversely treated relative to other similarly situated individuals, based on impermissible considerations such as "race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."[64]  Purposeful discrimination requires that the actor's conduct was "because of" the protected characteristic.[65] "Conclusory allegations of selective treatment are insufficient to state an equal protection claim."[66]

### 2.    Section 1985 Claim

Section 1985(3) establishes liability for conspiracy if the plaintiff can

---

[62]    *See Kentucky*, 473 U.S. at 166.

[63]    *See Iqbal*, 129 S. Ct. at 1948.

[64]    *Miner v. Clinton, N.Y.*, 541 F.3d 464, 474 (2d Cir. 2008) (quotation marks and citation omitted).

[65]    *Iqbal*, 129 S. Ct. at 1948 (citing *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

[66]    *Bishop v. Best Buy*, No. 08 Civ. 8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (quotation marks and citation omitted).

show:

> "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."[67]

Conspiracy under section 1985 requires an underlying constitutional violation,[68] and factual allegations showing a meeting of the minds to achieve the unlawful result.[69] Conspiracy fails as a matter of law where the participants are part of a single corporate entity.[70] Moreover, the conspiracy must be motivated by racial animus, rather than by any personal malice of the conspirators toward the victim.[71] A complaint containing only "vague, general or conclusory accusations"

----

[67]     *Id.* at *13 (quotation marks and citation omitted).

[68]     *See id.* (citing *Friends of Falun Gong v. Pacific Cultural Enter.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003)).

[69]     *See id.* (citing *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (footnote omitted)).

[70]     *See Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008); *Ritzie v. City Univ. of N.Y.*, 703 F. Supp. 271, 277-78 (S.D.N.Y. 1989) (collecting cases).

[71]     *See Bishop*, 2010 WL 4159566, at *13 (citing *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 850 (1983)).

of conspiracy cannot withstand a motion to dismiss.[72]

### C.   State Claims Against Individual Defendants in Their Personal Capacity

#### 1.   Breach of Implied Contract

New York law does not recognize a breach of contract claim where "the essence of the complaint is that the school breached its agreement by failing to provide an effective education" – i.e., "educational malpractice."[73]  While a student's relationship with a university may give rise to an implied contract in certain circumstances,[74] "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted."[75]  A school's published policy of providing "fair and equal treatment" to its students is "a general statement of [its] adherence [ ] to existing anti-discrimination laws.  It does not create a separate and independent

---

[72]   *See id.* (citing *Mass v. McClenahan*, 893 F. Supp. 225, 231 (S.D.N.Y. 1995)).

[73]   *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206-07 (S.D.N.Y. 1998) (citations omitted).  *Accord S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 299 (S.D.N.Y. 2007) (citing *Livolsi v. Hicksville Union-Free Sch. Dist.*, 693 N.Y.S.2d 617, 617-18 (2d Dep't 1999)).

[74]   *See Gally*, 22 F. Supp. 2d at 206.

[75]   *Id.* at 207.

15

contractual obligation."[76]  Furthermore, a breach of contract claim cannot survive

against individuals who are not party to a contract.[77]

### 2.    IIED

"Under New York law, a claim for intentional infliction of emotional

distress requires a showing of (1) extreme and outrageous conduct; (2) intent to

cause, or reckless disregard of a substantial probability of causing severe emotional

distress; (3) a causal connection between the conduct and the injury; and (4) severe

emotional distress."[78]  Whether the alleged conduct is sufficiently extreme and

outrageous is a matter of law for the courts to decide.[79]  The extreme and

outrageous requirement provides for liability only where the conduct has been "so

outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

---

[76]    *Id.* at 208 (citing *Blaise-Williams v. Sumitomo Bank, Ltd.*, 592 N.Y.S.2d 41, 42 (1st Dep't 1993)).

[77]    *See Newman v. Berkowitz*, 857 N.Y.S.2d 75, 75 (1st Dep't 2008).

[78]    *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)).

[79]    *See Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 324 (S.D.N.Y. 2008) (citing *Howell*, 81 N.Y.2d at 121).

civilized society."[80]

### 3.    NIED

Three lines of NIED cases exist under New York law.[81] *First*, NIED may be found where the defendant owes a direct duty of care to the plaintiff, the breach of which causes unreasonable risk of physical harm to the plaintiff.[82] *Second*, NIED may be found where plaintiff witnesses injury to an immediate family member while in the zone of danger created by the defendant.[83] *Third*, NIED may be found under special circumstances, usually involving false death reports of family members.[84]

### D.    Amendments to Pleadings

"Rule 15(a) provides that, other than amendments as a matter of course, a party may amend the party's pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so

---

[80]    *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (quotation marks and citations omitted); *Howell*, 81 N.Y.2d at 122 (quotation marks and citations omitted).

[81]    *See Kennedy v. McKesson Co.*, 58 N.Y.2d 500, 504 (1983).

[82]    *See, e.g., Battalla v. State*, 10 N.Y.2d 237 (1961).

[83]    *See, e.g., Bovsun v. Sanperi*, 61 N.Y.2d 219 (1984).

[84]    *See, e.g., Johnson v. State*, 37 N.Y.2d 378 (1975).

requires."[85]  "[W]hether to permit a plaintiff to amend its pleadings is a matter committed to the Court's sound discretion."[86]  However, the Supreme Court has explained that

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."[87]

Accordingly, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'"[88]

## V.    DISCUSSION

### A.    Sovereign Immunity Bars Okoh's Claims Against CUNY

---

[85]    *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks and citation omitted).

[86]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quotation marks and citation omitted).

[87]    *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *Accord Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

[88]    *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

18

The Second Circuit has expressly held that "CUNY senior colleges" are arms of the state for purposes of Eleventh Amendment sovereign immunity.[89] "CUNY senior colleges" include CUNY's graduate schools, as defined by statute.[90] Therefore, CUNY is an arm of the state entitled to protection under sovereign immunity.

Okoh argues that CUNY has waived its immunity by accepting federal funds.[91] However, "waiver based on participation in a federal program will be found only if stated in express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."[92] Okoh has not pointed to any statutory language whereby New York expressly subjected CUNY to waiver by accepting federal funds, nor have I found any such

---

[89]   *Clissuras v. City Univ. of N.Y.*, 359 F.3d 79, 82 (2d Cir. 2004) (per curiam).

[90]   *See* N.Y. Educ. Law § 6202(5) (McKinney 2010) ("The term "senior college" shall mean an institution of higher education in the city of New York, which is governed and administered by the board of trustees, including, but not limited to, a professional or graduate institution, an institution for research, [or] an administrative institution. . . .").

[91]   *See* Pl. Mem. at 3-4.

[92]   *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001) (citation omitted).

express language.[93]  Therefore, CUNY's sovereign immunity has not been

abrogated or waived, and Okoh's claims against CUNY must be dismissed for lack

of subject matter jurisdiction.

### B.   Sovereign Immunity Bars Okoh's Claims Against Individual Defendants in Their Official Capacity

Sovereign immunity bars suits against state officials acting in their

official capacity.  The Second Circuit has recognized that state university

professors sued in their official capacity can be protected under sovereign

immunity, absent congressional abrogation or waiver.[94]  The *Ex parte Young*

exception to immunity does not apply because Okoh does not seek prospective

---

[93]    *See id.* ("That is to say, mere participation by a state in a federal program providing financial assistance does not establish the state's consent to be sued in federal court.  Because plaintiffs failed to identify under what statutes defendants receive federal funding, or what Congress provided for in those statutes with respect to sovereign immunity, we have no way of ascertaining what Congress intended or whether the abrogation of immunity was expressed in unmistakably clear language." (quotation marks and citations omitted)).

[94]    *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (citing *Will*, 491 U.S. at 71; *Kentucky*, 473 U.S. at 165-66).  *See also Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (holding that state employees sued in their official capacity are immune under the Eleventh Amendment); *Johnson v. Goord*, No. 01 Civ. 9587, 2004 WL 2199500, at *4 (S.D.N.Y. Sept. 29, 2004) (same).

injunctive relief against Individual Defendants.[95]  Therefore, Okoh's claims against

Individual Defendants, to the extent that they are sued in their official capacity,

must be dismissed for lack of subject matter jurisdiction.

### C.    Okoh Fails to State Claims against Individual Defendants in Their Personal Capacity

Because sovereign immunity bars claims against CUNY and

Individual Defendants in their official capacity, the only remaining claims are

those that may be asserted against Individual Defendants in their personal capacity.

Okoh's remaining claims are race and national origin discrimination pursuant to

section 1983, conspiracy pursuant to section 1985, breach of implied contract,

IIED, and NIED.[96]

### 1.    Section 1983 Claim

Personal liability under section 1983 can be found against a

---

[95]    *See* Compl. at 4 ("I would like the Court to mandate measures for The City University of New York university system so that I am not retaliated against in response to filing this suit.").

[96]    Okoh cannot maintain his discrimination claim pursuant to Title VI because the statute does not provide for personal liability. *See Kelly v. Rice*, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005) ("The proper defendant in [a Title VI] case is the entity that receives federal financial assistance, not an individual." (citations omitted)).  Okoh cannot maintain his discrimination and retaliation claims pursuant to Title VII because the statute proscribes unlawful practices by an "employer," which excludes Individual Defendants, as defined by statute. *See* 42 U.S.C. § 2000e(b).

government official who deprives another of a federal right while acting under color of law. A state university professor acts under the color of law when he misuses the authority vested in him by the state.[97]

Okoh claims deprivation of his Fourteenth Amendment right to equal protection by alleging that he was adversely treated, on account of his African-American race or Nigerian descent, relative to non-African-American students.[98] To support his claim, Okoh states that Sullivan spent more time with non-African-American students and rarely interacted with Okoh, and that Okoh was the only African-American student in Sullivan's classes.[99] Okoh further points to Sullivan's remark "[t]he only thing harder is picking cotton" as evidence of racial animus.[100] These facts, without more, are not sufficient to raise a reasonable inference that Individual Defendants' actions were "because of" racial animus, as required to allege a violation of Okoh's right to equal protection.[101] Therefore, Okoh fails to

---

[97]   *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003).

[98]   *See* Pl. Mem. at 4-5.

[99]   *See* Compl. at 6-9.

[100]   *Id.* at 8.

[101]   Okoh does not state facts that raise a plausible inference that Individual Defendants, in their personal capacity, deprived Okoh of a different type of constitutional right, such as his Fourteenth Amendment right to due process.

state a section 1983 claim.

### 2.    Section 1985 Claim

Okoh claims that Individual Defendants had an "agenda" to make Okoh feel "extremely uncomfortable so that [he] would desire to quit the Program."[102] Okoh cites, as an example, Dodziuk's standing outside of Sullivan's office when Okoh left his May 2006 meeting.[103] Okoh urges the court to expose "great light" on the conspiracy because "[it] will be overlooked by the untrained eye."[104]

Okoh does not plead facts that raise a reasonable inference of an underlying constitutional violation, or a meeting of the minds to achieve the unlawful result.  In any event, a section 1985 claim fails where the participants of the alleged conspiracy are part of a single entity, such as where the "institutional defendant is CUNY[ ][and] the individuals defendants are all employees of that entity."[105] Even if a conspiracy were to exist, Okoh does not allege sufficient facts to raise a plausible inference that the conspiracy was motivated by racial animus,

---

[102]    Pl. Mem. at 11.

[103]    *See* Compl. at 10; Pl. Mem. at 13.

[104]    Pl. Mem. at 13.

[105]    *Ritzie*, 703 F. Supp. at 277.

23

rather than by any personal malice of the Individual Defendants. Therefore, Okoh fails to state a section 1985 claim.

### 3. Breach of Implied Contract

New York does not recognize a breach of implied contract claim for educational malpractice. Okoh claims that Individual Defendants failed to give him adequate attention and time, and misinformed him about his progress and the degree requirements.[106] However, Okoh does not point to specific provisions of CUNY's internal policies that might constitute promises or obligations, which were breached by the Individual Defendants.[107] Neither does Okoh allege that the Individual Defendants, in their personal capacity, were parties to any implied contract that may have existed between Okoh and CUNY. Therefore, Okoh fails to state a breach of implied contract claim.

### 4. IIED

Okoh does not explicitly raise claims of IIED or NIED, but states that he suffered a nervous breakdown and emotional trauma after his May 2006

---

[106]   *See* Compl. at 6-8, 13-14.

[107]   The only example offered by Okoh is the requirement that doctoral candidates complete all requirements within eight years of matriculation – a rule that other students were allowed to exceed without consequence. *See id.* at 15. However, this requirement is neither a promise nor an obligation owed by Individual Defendants.

24

meeting with Sullivan, causing him to be hospitalized.[108]  To recover under IIED, Okoh must satisfy the extreme and outrageous element, which is a high standard that is difficult to satisfy.[109]  Okoh has not done so here.  Indeed, Okoh does not even identify which of the Individual Defendants' acts were so extreme and outrageous as to have caused Okoh's emotional distress.  Therefore, Okoh fails to state an IIED claim.

### 5.   NIED

Okoh's allegations do not fit into any of the three lines of NIED cases recognized under New York law.  Therefore, Okoh fails to state a NIED claim.

### D.   Leave to Replead

A pro se plaintiff should be permitted to amend his complaint prior to its dismissal for failure to state a claim "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."[110]  However, "it is well established that leave to amend

---

[108]   *See id.* at 10.

[109]   *See, e.g., Howell*, 81 N.Y.2d at 122 ("[O]f the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous.").

[110]   *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999).

a complaint need not be granted when amendment would be futile."[111]

It would be futile to amend with regard to CUNY and Individual Defendants in their official capacity, as sovereign immunity bars Okoh's claims. It would likewise be futile to amend with regard to Individual Defendants in their personal capacity, as Okoh has not been able to allege facts giving rise to a plausible inference that Individual Defendants were motivated by racial animus, despite three opportunities to do so.[112]   Accordingly, Okoh's Complaint is dismissed with prejudice.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to close this motion (docket # 16), and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 24, 2011

---

[111]      *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

[112]      I note that Okoh has not sought leave to replead. I nonetheless address this question sua sponte as Okoh is appearing pro se.

26

## - Appearances -

**Plaintiff (Pro Se):**

Efua Ehi Okoh
2834 Colon Drive
Copley, OH 44321
(347) 229-5039

**For Defendants:**

Charles E. Enloe
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271
(212) 416-8910

27